## THE STATE, VANATTA, PROSECUTOR, v. THE MAYOR, &c., OF MORRISTOWN.

1. An ordinance directing the grading of a street will not be set aside on the ground that the grade line has been adopted only for a portion of the street, at the instance of a prosecutor whose lands are on that part of the street for which the grade line has been adopted.

2. An ordinance adopting grade lines by reference to a map on file—the map, when produced, not being marked filed—is not void for uncertainty, the map adopted by the ordinance being sufficiently identified by proof.

3. The fourth section of the act of March 17th, 1858, (*Nix. Dig.* 837,*) provided that "the grade of no street in any city or town which has been built on shall be altered, unless by the consent of a majority of owners in interest of the lots fronting on the part proposed to be altered." *Held*—That the consent, if given, did not create an easement or an interest in lands, and need not be given by a formal instrument in writing, or in express words. Any formal act on the part of the owners of the lands affected, clearly indicative of a willingness to have the grade altered in the manner contemplated, communicated to the common council to influence their action in undertaking the improvement, will answer the requirements of the statute. A petition to the common council asking for the improvement, referring to the grade line shown on the profile map, is a sufficient consent.

4. Since the passage of the act of March 17th, 1858, an alteration in the grade of a street is a judicial and not a ministerial act, and an ordinance directing such change of grade must be preceded by a reasonable notice of its passage, that persons affected by it may have an opportunity to be heard.

5. The distinction between judicial and ministerial ordinances considered.

6. An ordinance irregularly adopted will not be set aside, the proposed work having been substantially completed, and the prosecutor, by action at law, having recovered the same compensation he would have been entitled to, if the proceedings had been entirely regular. In such case, the writ will be dismissed, without costs.

On *certiorari.*

Argued February Term, 1870, before BEDLE, DALRIMPLE, and DEPUE, Justices.

For prosecutor, *J. Vanatta* and *C. Parker.*

Contra, *H. C. Pitney.*

* *Rev.,* p. 1009, § 73.

The opinion of the court was delivered by

DEPUE, J.   The writ of *certiorari* in this case brings up for review two ordinances of the common council of the town of Morristown, in relation to Doughty street.   Both these ordinances were passed on the 28th of July, 1868.   One of them is simply an adoption of 'the grade of Doughty street, from Oak to Market street, and the grade of De Hart street, from Maple avenue to Doughty street, as shown by the profile maps of the said streets, made by the town surveyor, and on file in the office of the town clerk.   The other is entitled "An ordinance to regulate Doughty street, between Market street and the summit in Doughty street, near Perry street."   The first section of this latter ordinance prescribes the width to which the street shall be worked and graded. The second section ordained that the working and grading provided for in the first section should be done in conformity with the profile map adopted by the common council, and on file with the town clerk.   The other sections provide for the details of the work, and are of no consequence in this case.   The prosecutor is the owner of lands which are built upon, and front on that part of the street in which the grade is altered by the ordinance.

The first objection to these ordinances urged by the plaintiff's counsel is, that by the first ordinance the grade between Market and Oak streets only is adopted; whereas, by the second ordinance, the work of grading is directed to be done between Market and Perry streets.   The premises of the prosecutor are situate between Market and Oak streets, and whatever effect the omission to adopt a grade co-extensive in distance with the work directed to be done, may have on the rights of the owners of lands between Oak and Perry streets, it cannot avail the prosecutor in this case.

The second objection is, that the ordinances are void for uncertainty, for that they both refer to a map on file, the map produced not being marked filed, and containing two lines, one in ink and the other in pencil, and the ordinance

not designating which one of these lines is adopted as the grade line.

The adoption of grade lines by ordinance, by reference to maps and profiles, is the usual, and indeed the only practicable means of legislating on the subject. The ordinance sufficiently describes the map as having been made by the town surveyor, and as being on file in the office of the town clerk. Its identification is a subject for proof, which is plenary in this case. The pencil grade line marked on the map is between Oak and Perry streets, and not on that part of the street on which the prosecutor's premises are situate. It is apparent by the description in the ordinance that the grade line, according to which the work was directed to be done between the streets last mentioned, is the pencil line marked on the map. Be that as it may, the prosecutor is not interested in any question which may be mooted, as to whether the pencil or ink grade line is the line of grade according to which the work is directed to be done on other parts of the street.

The third objection is, that there was no such consent to the alteration of the grade by the owners of property affected, as is required by the act of March 17th, 1858, entitled "An act to define the rights of parties whose property is damaged or taken for public use in cases of the alteration of the grades of streets or highways." *Nix. Dig.* 837.*

The fourth section of this act prescribes that "the grade of no street in any city or town, which has been built on, shall be altered, unless by the consent of the majority of owners in interest of the lots fronting on the part proposed to be altered, nor without paying to the owners of such buildings the damages sustained by the alteration of such grade."

The street in question had been a public street for many years before the injury complained of. The wrong done to the prosecutor was not in taking his lands for the purpose of laying out or opening a street. The injury is to his adjoining lands, by lowering the grade of the street, and thereby making access to his premises more difficult. By

* *Rev.*, p. 1109.

the common law, no action lay against individuals having public duties to perform, with respect to the making and repairing of public highways, to recover for consequential injuries resulting from the execution of the work, when it was executed with due skill and caution. *Quinn* v. *City of Paterson*, 3 *Dutcher* 35. It was a settled principle of the common law that where a highway was once legally established, the public not only acquired an easement in the lands over which it was located, to pass and re-pass over them, but, in addition thereto, the right to amend and repair it, and for this purpose to dig down and remove the soil sufficiently to make the passage safe and convenient. It has accordingly been held that paviors acting under the authority of an act of parliament, and surveyors of the highways in the lawful discharge of their functions as prescribed by statute, are not liable to the owners of lands fronting on the highway for injuries occasioned to their buildings or lands by lowering or elevating the grade of the street, if the work has been done with proper skill and care to avoid unnecessary injury to adjoining property. *Governor, &c.,* v. *Meredith,* 4 *Term R.* 794 ; *Boulton* v. *Crowther,* 2 *B. & C.* 703 ; *Callender* v. *Marsh,* 1 *Pick.* 417 ; *Radcliff's Ex'rs* v. *Mayor of Brooklyn,* 4 *Comst.* 195; *O'Conner* v. *Pittsburg,* 18 *Penn.* 187 ; *Smith* v. *Corporation of Washington,* 20 *Howard* 135.

The act does not prescribe the mode in which the consent necessary to legalize an alteration in the grade of a street which is built on shall be given. The public had previously acquired the right to use the lands over which the street was laid for the purposes of a highway. The consent, if given, does not create an easement or estate in lands, which, by the rules of the common law, cannot be created unless by an instrument of grant under seal. *Hetfield* v. *The Central R. R. Co.,* 5 *Dutcher* 571. Nor does it confer an interest in lands within the statute of frauds. The question for decision, then, is not embarrassed by any of those considerations which arise upon the technicalities of the common law in relation to creating estates in lands, nor even by those rules which have originated from the statute of frauds.

The Supreme Court of New York in construing that section of their road law which prohibits the laying out of a road through improved or cultivated land without the consent of the occupant, unless upon the application of twelve freeholders, held that the consent required by the statute might be given by parol. *Noyes* v. *Chapin*, 6 *Wend.* 461; *Baker* v. *Braman*, 6 *Hill* 47; *Embury* v. *Conner*, 3 *Comst.* 511.

The consent mentioned in the act now under consideration need not be given by a formal instrument in writing, neither is it necessary that it should have been in express words. Any formal act on the part of the owners of the lands affected, clearly indicative of a willingness to have the grade altered in the manner contemplated, communicated to the common council to influence their action in undertaking the improvement, will answer the requirements of the statute. A petition to that body, signed by the individuals whose consent is necessary to the execution of the work, asking the council to forward the improvement, and referring to the plans on which it was proposed to execute the work, would be plenary evidence of such consent. I see no reason for a more stringent construction of the statute in favor of the landowner. No other construction can be obtained without the interpolation of words in the statute.

The improvement of Doughty street was contemplated as far back as 1865. In that year the profile map referred to in the ordinance was made by Mr. Carter, who was then town surveyor. It was filed with the city clerk, and has remained in his custody ever since, except while it was loaned to the street committee. No active measures were taken at that time to carry out the proposed improvement. On the 25th of June, 1867, at a meeting of the common council, the following paper was presented:

" *To the Mayor, Recorder, Aldermen, and Common Councilmen of Morristown:*

"The undersigned hereby agree to pay to the common council the sums affixed to our respective names, amounting in all to the sum of $        , said money to be paid

when the common council shall have graded and regulated
Doughty street, in accordance with the grade line agreed
upon, and shown upon the profile map of said street, on file
in the town clerk's office; and, provided, that such work shall
be done before the 1st day of September, 1867."

This paper was signed very generally by the owners of
property situate on Doughty street, with the respective sums
opposite their names which they agreed to contribute towards
defraying the expense of improving the street. It was signed
by a majority of the owners in interest of the lots fronting on
the part proposed to be altered, whether regard is had to the
whole length of the street from Market to Perry street, or
only to that part which lies between Market and Oak streets.
The prosecutor did not, however, sign it. On the presenta-
tion of this paper, the common council adopted a minute of
the presentation of this paper, and a resolution to meet on
Doughty street, on a day named, for the examination of the
grade of said street.

The communication of June, 1867, to the common council,
is a compliance with the statute. It was presented to the
common council with a view to induce them to grade and
regulate the street in accordance with the grade agreed
upon and shown upon the profile map, which is referred to
in the ordinance. It is signed by the requisite number of
owners of lots fronting on the part where the grade was
proposed to be altered, and embraces a subscription of
money to aid in the execution of the work, which could not
be done without the alteration of the grade complained of.
As evidence of consent to such alteration by the persons
whose names are signed to it, this paper is conclusive. It
is true that the work was not done by the day named in the
paper, and that the sums subscribed were never paid or de-
manded. But the projected improvement was not aban-
doned. It was deferred because of improvements elsewhere
that seemed to be more imperatively required, and the ap-
prehension of some litigation on account of water being cast
by the change of grade upon lands adjacent to the streets.
The paper remained on file with the clerk, and the consent

which is necessarily implied from it was never withdrawn. On the contrary, since the allowance of this writ another paper expressly consenting to the grading of this street, under the ordinance in question, has been presented to the common council, signed by all the parties who signed the previous paper, except Mr. Ayers, whose consent was not necessary to make it the consent of the majority of owners in interest, and who was a member of the council when the ordinances were passed, and, it is to be inferred from the depositions, favored their adoption.

The fourth and last reason assigned for setting aside these ordinances is, that they were adopted without any previous notice, by publication or otherwise. The defendants' charter does not contain any provision making notice of the intention of common council to pass ordinances a part of the prescribed method of enacting ordinances. But there is a class of subjects within municipal cognizance, with respect to which the courts have imposed a condition to the validity of their official acts, that previous notice of their intended action shall be given to the parties affected, where no such requirement is contained in their charters. The cases in which this doctrine has been held proceed on the principle that it is contrary to natural justice that a person should be bound by proceedings of a judicial nature, affecting his person or property, without having an opportunity of being heard. *State* v. *Jersey City*, 4 *Zab.* 662; *Vantilburgh* v. *Shann*, 4 *Zab.* 740; *Freeholders of Hudson* v. *The State*, 4 *Zab.* 718; *State* v. *Newark*, 1 *Dutcher* 400; *State* v. *Orange*, 3 *Vroom* 49; *The State, The Associates, &c., pros.,* v. *Jersey City*, 5 *Vroom* 31.

Ordinances directing the mere repairing and re-paving of streets or re-construction of sewers, which are enjoined upon municipal corporations as matters of duty, are purely ministerial; but ordinances directing new streets to be opened or altered, new sewers to be constructed, or other similar public improvements to be made, by which the property of individuals is taken or affected, are, in their nature, judicial. *City of Camden* v. *Mulford*, 2 *Dutcher* 57, *per* CHIEF JUSTICE

GREEN. An ordinance laying out new streets, or directing a sewer to be built, is judicial. *Parks* v. *Boston*, 8 *Pick.* 218; *The Rochester, &c., Co.* v. *City of Rochester*, 3 *Comst.* 464. The distinction is between those ordinances which adopt a general system of policy affecting all the inhabitants of the city or town, or all the property situate within corporate limits, directing the execution of mere public duties, the burthen of which is borne by all equally, and those which provide for the making of a particular improvement affecting property in one locality, the cost of which is to be defrayed by certain specified individuals. The passing of ordinances of the first class is within the ordinary legislative functions with which the common council is entrusted as the representatives of the people, which they may exercise in their discretion. Those of the latter class are the execution of certain statutory powers over individuals, to affect their property, which have been specially conferred upon the common council by the act of incorporation. With respect to this latter class of ordinances, the adoption of an ordinance directing the improvement to be made is a judicial act, affecting those individuals, and they are entitled to be heard before the ordinance is passed which adjudges the necessity or expediency of the proposed improvement and directs it to be made.

Whatever authority the defendants might have exercised under the powers over the streets, conferred on them by their charter independently of the act of 1858, that act has imposed limitations on the powers of municipal corporations over streets which have been built on, in the matter of altering the grades, that render the ordinances which direct the alteration to be made judicial, instead of merely ministerial acts. The first section of the act gives an action on the case to any person owning any house or other building standing and erected upon any street or highway, the grade whereof shall be altered by virtue of the ordinance, resolution, or other proceeding of the legislative authority of any city, borough, or town corporate, to recover from the said city, borough, or town corporate all damages which such owners

shall suffer by reason of the altering of any such grade. The fourth section prohibits the altering of the grade of any street which has been built on, unless by the consent of the majority of owners in interest of lots fronting on the part proposed to be altered, and upon terms of paying to the owners of such buildings the damages sustained by the alterations of such grades. And by the fifth section, the damages mentioned in the act to be paid to such owners, shall be assessed upon and paid by the lands and real estate benefited thereby, in proportion to the benefit received.

We have not considered the question whether, after this act was passed, a municipal corporation whose charter does not contain provisions for making and collecting assessments for benefits derived from the making, widening, or altering highways, can legally pass ordinances for altering the grades of streets which have been built on, as that question was not raised by counsel. It is sufficient for present purposes that assuming the defendants possessed the power to pass the ordinances complained of, they were acts of a judicial nature. The power to execute the work of the proposed improvement, by the statute, was made to depend upon the performance of a certain act by those whose property was affected by it, in relation to the consent necessary to enable the municipal authorities to alter the grade. The fact of the consent of a sufficient number of such owners was a matter *aliunde* the proceedings of the council, the ascertainment and decision of which was a judicial act, (*Township of Morris* v. *Carey*, 3 *Dutcher* 377, 396, per JUSTICE VREDENBURGH,) and the adjudication upon it by the council affected the property of the prosecutor in respect of the right which the statute gave him, to enjoy it free from any liability to injury by a change of grade, unless upon the conditions prescribed by the act. Before the common council made a decision of that fact, and passed an ordinance directing the work to be done, a reasonable notice should have been given, that persons affected by it might have an opportunity to be heard.

It was said by the defendants' counsel that the prosecutor

had notice that the ordinances on this subject were about to be passed. The prosecutor knew that the matter of changing the grade of Doughty street was under consideration. He also knew that the grade line of the Carter map was unsatisfactory to the owners of lands on the street, and that negotiations were being had between the owners and city officers, to obtain a modification of that line, which were attended with success as to that part of the street which lies between Oak and Perry streets. His objections to the Carter grade line on that part of the street between Oak and Market streets, which was along his premises, were known to at least one member of the common council. That he discussed the subject with that member of the council, did not dispense with the necessity of notice that the subject was to be acted upon by the common council. He was entitled to be heard before the common council, sitting in its official capacity to hear and decide upon objections that might be made to their proposed action.

Upon these circumstances alone the court would annul the ordinances in question. But it appears by the depositions laid before the court that the excavations necessary to the proposed alteration of grade had been substantially finished when the writ in this case was served. If the ordinances should be set aside, and the prosecutor should then sue for the injury done to his property by persons acting under the ordinances while in force, if they would not be a legal justification for all acts done under their authority, the measure of the plaintiff's recovery would be merely compensatory damages—the same which are recoverable in actions brought by virtue of the provisions of the first section of the act of 1858. It is officially within the knowledge of the court that the prosecutor has already brought an action under that act, to recover for the injuries to his property by the alteration in the grade of this street, and that the action has been prosecuted to a verdict.

To vacate these ordinances in this situation of affairs, while it would be no substantial benefit to the prosecutor,

might needlessly embarrass and delay the completion of the work of improvement on other parts of the street. There is no reason to doubt the good faith of the municipal authorities in these proceedings, and the reversal of the ordinances under these circumstances, would be a measure of punitive remedy the court is not called upon to administer in this case.

For these reasons, the writ is dismissed, without costs.

CITED *in State, Boice, pros.*, v. *Bloomfield*, 9 *Vr.* 97.